**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------X

TPR INVESTMENT ASSOCIATES, INC.,  :
                                    :

            Plaintiff,       :

                                      :

       -against-        :

                                      :

PEDOWITZ & MEISTER LLP, as escrow  :
agent, DALIA GENGER, as trustee of :
the Orly Genger 1993 Trust, and    :
ORLY GENGER, as beneficiary of the :
Orly Genger 1993 Trust,           :

                                      :

            Defendants.      :

--------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _May 15, 2014_

No. 13 Civ. 8243 (JFK)
**OPINION & ORDER**

<u>Appearances</u>

For TPR Investment Associates, Inc.
    MORGAN, LEWIS & BOCKIUS, LLP
      By:  John Dellaportas
         Mary C. Pennisi

For Orly Genger
    ZEICHNER, ELLMAN & KRAUSE, LLP
      By:  Yoav M. Griver
         Bryan Leinbach

For Pedowitz & Meister, LLP
    PEDOWITZ & MEISTER, LLP
      By:  Robert A. Meister

For Dalia Genger
    Judith Bachman


**JOHN F. KEENAN, United States District Judge:**

    We proceed once more unto the breach within the Genger family.  In this latest action, TPR Investment Associates, Inc. ("TPR"), which is controlled by Sagi Genger, seeks a judgment directing the release of about $10.3 million in escrowed

proceeds (the "Proceeds") arising out of TPR's sale of certain shares of Trans-Resources Inc. to a group of parties known as the "Trump Group."  Defendant Orly Genger, Sagi's estranged sister, has filed a motion to dismiss this action.  TPR not only opposes Orly's motion but has also cross-moved for summary judgment.  Most recently, Orly filed a motion to dismiss the crossclaims against her by Pedowitz & Meister LLP and Dalia Genger.

For the reasons that follow, Orly's motion to dismiss the complaint is denied, and TPR's motion for summary judgment is granted.  Orly's motion to dismiss the interpleader crossclaim by Pedowitz & Meister LLP is granted, and her motion to dismiss Dalia's crossclaim against her is denied as moot.

## I.  Background

The Court assumes familiarity with the extensive history of the Genger family imbroglio. See generally Glenclova Inv. Co. v. Trans-Resources, Inc., 874 F. Supp. 2d 292, 295–300 (S.D.N.Y. 2012) (hereinafter, the "Omnibus Opinion" or Glenclova); TR Investors, LLC v. Genger, No. 6697-CS, 2013 WL 603164, at *3–13 (Del. Ch. Feb. 18, 2013).  The following section contains only the background that is necessary to understand the instant action and decision.

### A.   Relevant History

The Genger combatants include Arie Genger and his adult daughter Orly in one camp; Arie's former wife Dalia, who is the trustee of a trust benefitting her estranged daughter Orly in a second camp; and former Trans-Resources majority owner TPR and its president, Sagi, who is Arie and Dalia's adult son.  Also relevant is the collection of entities referred to as the "Trump Group."  These include Glenclova Investment Co.; TR Investors, LLC; New TR Equity I, LLC; New TR Equity II, LLC; Eddie Trump; Jules Trump; and Mark Hirsch.

Not including the instant action, most of the litigation between these disputants has been a battle over shares of Trans-Resources stock.  Some of the shares in dispute have been referred to as the "Orly Trust Shares."  These 1,102.8 shares had been transferred by TPR, which was then controlled by Arie, to the Orly Genger 1993 Trust (the "Orly Trust") as part of Arie and Dalia's 2004 divorce settlement.  Once the Trump Group learned of this and other transfers in 2008, it objected on the grounds that the transfers were prohibited by the March 31, 2001 Stockholders Agreement between Trans-Resources, TPR, and members of the Trump Group.  Ultimately, Glenclova filed the Glenclova action to enforce the 2001 Stockholders Agreement.  See generally Glenclova, 874 F. Supp. 2d at 295–96.

To cover its bases, the Trump Group separately entered into an agreement with TPR (by then under Sagi's control), which gave the Trump Group an option to purchase the Orly Trust Shares should a court determine that the 2004 transfers were void.  If the transfers were ruled to be valid, then the Orly Trust would keep the Orly Trust Shares.  But if the transfers were deemed void, the shares would go back to TPR, which would then sell them to the Trump Group.

The Delaware Chancery Court determined that Arie's transfer of the Orly Trust Shares to the Orly Trust was void, such that TPR (and not Arie or the Orly Trust) retained legal and beneficial ownership of the disputed shares. TR Investors, LLC v. Genger, C.A. No. 3994-VCS, 2010 WL 3279385, at *3 (Del. Ch. Aug. 9, 2010).  While this ruling was being appealed, the Trump Group exercised its option to purchase the Orly Trust Shares from TPR for about $10.3 million.  All of the parties agreed that this amount, the Proceeds, should be held in escrow while the Delaware appeal continued.  Accordingly, the Proceeds were held in escrow by Pedowitz & Meister LLP ("P&M" or the "Escrow Agent"), pursuant to an agreement between Orly, Dalia, TPR, and the Trump Group (the "Escrow Agreement").

That Escrow Agreement is central to the instant litigation, and will be discussed at greater length below.  To summarize, it stated that the Trump Group would proceed with its plan to

Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 5 of 21


purchase the Orly Trust Shares from TPR, but that the purchase amount would be held by the Escrow Agent pending a final ruling on beneficial ownership by the Delaware Supreme Court. Ultimately, the Delaware Supreme Court reversed the Chancery Court's determination of beneficial ownership because it ruled that the Chancery Court lacked in personam jurisdiction over TPR and the Orly Trust. Genger v. TR Investors, LLC, 26 A.3d 180, 201-03 (Del. 2011).

After the Delaware Supreme Court's ruling reopened the question of beneficial ownership of the Orly Trust Shares, the Escrow Agent filed an interpleader action before this Court. See Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., No. 11 Civ. 5602 (S.D.N.Y.). I dismissed the interpleader action for lack of subject matter jurisdiction, reasoning that the parties' competing claims were for beneficial ownership of the Orly Trust Shares, rather than for the Proceeds from the sale of those shares. See Glenclova, 874 F. Supp. 2d at 300-04. Thereafter, the Southern District Cashier's Office returned the $10.3 million to the Escrow Agent's escrow account, where it has remained. Since that time, the parties have litigated principally in New York Supreme Court. See Genger v. Genger, No. 651089/2010 (N.Y. Sup. Ct.). As part of a stipulation dismissing the action in Delaware Chancery Court, the parties to that action — TPR/Sagi, the Trump Group, and Dalia, but not Arie

or Orly — agreed that the Trump Group is the rightful owner of the Orly Trust Shares. (Dellaportas Dec. Ex. B ¶ 2.) Additionally, Orly and the Trump Group have settled their claims against each other.  Pursuant to that settlement, Orly acknowledged that the Trump Group is the record and beneficial owner of the Orly Trust Shares. (Id. Ex. J at 2.)  At long last, the dispute regarding ownership of the Orly Trust Shares is over.

Finally, it bears mentioning that in October 2011, TPR and Dalia signed a settlement agreement, which stated in part that TPR relinquished its right to the Proceeds in favor of the Orly Trust (still controlled by Dalia).  When Orly later found out about this agreement, she denounced it in New York Supreme Court as a "sham defendants-only" agreement which violated that court's order enjoining Sagi/TPR and Dalia from spending or demanding the Proceeds before a court could determine beneficial ownership of the Orly Trust Shares.  The Supreme Court agreed with Orly and declared the settlement agreement void, see Genger, 2013 WL 2396219, and the First Department recently affirmed that ruling, see Genger v. Genger, 982 N.Y.S.2d 11, 13 (1st Dep't 2014).  Dalia has moved for reconsideration or leave to appeal to the New York Court of Appeals.

**B.   This Case, Orly's Motions to Dismiss,
and TPR's Motion for Summary Judgment**

The instant case differs from the previous <u>Glenclova</u> action
in that here, the parties are fighting over the Proceeds from
the sale of the Orly Trust Shares — not the shares themselves.
As noted, Orly has relinquished her claim to the shares as part
of her settlement with the Trump Group.  TPR's complaint seeks a
permanent injunction directing the Escrow Agent to release the
$10.3 million in Proceeds to TPR.

Both P&M and Dalia filed answers and crossclaims "against
the other Defendants."  P&M seeks to invoke "defensive"
interpleader under Rule 22 of the Federal Rules of Civil
Procedure. (Oral Arg. Tr. at 27–29; P&M Ans. ¶ 28.) <u>See</u> Fed. R.
Civ. P. 22(a)(2).  This is a request to "do-over" the statutory
interpleader action I dismissed, with the purported difference
being that now there actually are adverse claimants to the
Proceeds themselves. <u>See generally</u> <u>Pedowitz & Meister</u>, No. 11
Civ. 5602.  Orly moves to dismiss P&M's crossclaim for
interpleader, contending that it violates both the Escrow
Agreement and my prior rulings dismissing the statutory
interpleader actions.

Meanwhile, Dalia's crossclaim sought the release of the
Proceeds to the Orly Trust, on the grounds that the voided
settlement agreement between the Orly Trust and TPR "is valid

and enforceable, and that the Appellate Division will so find."
(Dalia Crossclaim ¶¶ 19-20.).  Since Dalia filed her crossclaim,
the First Department ruled the opposite.  In light of this
development, Dalia's counsel advised at oral argument that she
no longer objects to TPR's requested relief. (Oral Arg. Tr. at
25-26.)  Dalia has thereby abandoned her crossclaim, mooting
Orly's motion to dismiss it.

        We now turn to the principal matter of Orly's motion to
dismiss TPR's complaint.  Orly urges that the complaint fails to
state a claim because none of the conditions to releasing the
Proceeds set forth in Section 2 of the Escrow Agreement have
been satisfied.  She also strongly contests TPR's representation
in the complaint that "all of the issues as to ownership of the
[Orly Trust] Shares and the accompanying . . . Proceeds are now
resolved." (Compl. ¶ 15.)  Not so, says Orly:  although she has
stopped pursuing beneficial ownership of the shares themselves,
the propriety of the 2004 transfer of the shares to the Orly
Trust remains an issue before the New York Supreme Court and the
First Department.  More generally, Orly accuses TPR of trying to
forum shop with this latest litigation.  As an alternative to
dismissal, she seeks a stay of this action while the litigation
in New York state remains ongoing.

In a single brief, TPR opposes Orly's motion to dismiss and moves for summary judgment.  Its position is largely predicated on my Omnibus Opinion, which stated that "if the 2004 transfer of shares to Arie and the Orly Trust is found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded funds." Glenclova, 874 F. Supp. 2d at 303.  Arguing from this language, TPR asserts that the recent resolution of the beneficial ownership issue compels a ruling that the interpleaded $10.3 million must be released to TPR.  TPR further contends that the doctrines of collateral estoppel, res judicata, and judicial estoppel bar Orly from relitigating the rulings in the Omnibus Opinion. Second, TPR contends that the longstanding New York Supreme Court case, which the parties continue to litigate, does not include a claim by Orly for the Proceeds.  Instead, according to TPR, Orly filed a new action in New York Supreme Court on December 23, 2013 seeking to compel the Escrow Agent to release the money to her.  Third, TPR notes that Orly is pursuing a claim for unjust enrichment in state court, and argues that for TPR to be unjustly enriched it must first be enriched — that is, it must first possess the funds at issue.  Fourth, TPR urges that a stay of this action would be inappropriate, essentially because it would cause further delay.

## II.  Discussion

### A.   Relevant Legal Standards

The standards governing the instant motions are well settled.  In reviewing Orly's motions to dismiss under Rule 12(b)(6), the Court accepts TPR's allegations of fact as true, and draws all reasonable inferences in its favor. See Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000); Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999).  Review of a motion for failure to state a claim "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)).  To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

TPR, which moves for summary judgment, will prevail if the evidence, viewed in the light most favorable to Orly, shows that there is no genuine issue as to any material fact and that it is therefore entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); Vacold LLC v. Cerami, 545 F.3d 114, 121 (2d Cir.

10

2010).  As the movant, TPR bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If TPR meets that burden, then Orly must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## B.   Analysis

Although the motions by TPR and Orly stand on different procedural ground, they raise the same question in substance: Should this Court direct the Escrow Agent to release the Proceeds to TPR?  To answer this question, I must determine whether TPR is correct that judgment in its favor would be consistent with my prior rulings and with the goals of the Escrow Agreement, or instead whether Orly is correct that the Escrow Agreement compels dismissal of the complaint.

**1.   The Relevant Portion of the Omnibus Opinion Is Not Dicta**

TPR argues that my Omnibus Opinion, plus the recent resolution of beneficial ownership, together compel release of the Proceeds.  It relies on specific passages in the Omnibus Opinion, in particular a passage in the discussion of this Court's jurisdiction over the interpleader actions then before me.  I concluded that the Court lacked subject matter jurisdiction, because the parties' real dispute was over beneficial ownership of the shares rather than the Proceeds from their sale.  The Opinion states:

> The point is subtle but important.  All potential claimants acknowledge that if Arie and the Orly Trust are deemed to be the beneficial owners of the Arie Shares and Orly Trust Shares, then the Trump Group's purchase of shares from TPR would be rescinded and the interpleaded funds would go back to the Trump Group. But, if the 2004 transfer of shares to Arie and the Orly Trust is found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded funds.
>
> [. . .]
>
> The condition precedent to disbursement of funds under either of the escrow agreements is judicial determination of the beneficial ownership of the Arie Shares and Orly Trust Shares, an issue left unresolved by the Delaware Supreme Court.  Nevertheless, once a court enters judgment on this issue, the escrow agents can disburse the escrowed funds to the prevailing claimant in accordance with guidance set forth in the escrow agreements.  In effect, the stakeholders have contracted around any possibility of "double liability or vexatious, conflicting claims" with respect to the interpleaded funds.
>
> [. . .]

> [T]he stakeholder plaintiffs did not need to commence
> the interpleader actions in order to get judicial
> guidance as to who beneficially owns the Arie Shares
> and Orly Trust Shares, and, as a result, who is
> entitled to the escrowed funds. . . . [Once] the New
> York Supreme Court reaches the merits of beneficial
> ownership of the Arie Shares, Orly Trust Shares, or
> both, that judgment will have preclusive effect in any
> other court where the parties have raised the matter—
> be it through res judicata or collateral estoppel. In
> other words, only one court can determine the
> beneficial ownership of the Arie Shares and/or the
> Orly Trust Shares, and, once that has occurred, the
> respective stakeholder plaintiffs will know which
> claimant is entitled to the interpleaded funds. There
> is no risk of one claimant to the Arie Shares
> prevailing in Delaware while another claimant to those
> shares prevails in New York, and therefore, no risk
> that the stakeholders will have to fend off adverse
> claims to the interpleaded funds. As the stakeholders
> have not demonstrated that the interpleaded funds are
> subject to actual or even potential adverse claims,
> the Pedowitz and Skadden interpleader actions do not
> meet the statutory requirements for subject matter
> jurisdiction under § 1335.

Glenclova, 874 F. Supp. 2d at 303-04. The Opinion also notes as

to Arie, who is in a substantively similar position as Orly on

this issue: "Moreover, while Arie asserts a beneficial

ownership in the underlying Trans-Resources shares, in no case

does he have a claim against the interpleaded funds themselves.

Instead, Arie's numerous counterclaims seek money damages for

breach of fiduciary duties that are ancillary to, and beyond the

scope of," the interpleader. Id. at 303 n.2.

The beneficial ownership issue is now dead; Orly has

settled with the Trump Group. Therefore, TPR argues, it is now

entitled to the Proceeds it received from the Trump Group in

consideration for those shares.  TPR continues, "That is not to
say Orly loses her day in Court . . . .  Orly remains free to
pursue her money damages, such as they are, in the New York
Supreme Court." (TPR Br. at 3; see also id. at 4 ("TPR should
receive the proceeds which unquestionably belong to it, while
Orly can seek to litigate the equities of that in state
court.").)

    Orly strenuously objects to TPR's characterization of the
Omnibus Opinion, and insists that the portion quoted by TPR is
mere dicta.  This is so, Orly urges, because I did not purport
to reach a legal conclusion in that passage, but only to explain
the background of the parties' positions.  Accordingly, Orly
argues, that language does not control the outcome here and
cannot override the Escrow Agreement among the parties.  TPR
replies that the quoted portion is not and cannot be dicta,
because "it was the express basis upon which this Court found a
lack of 'adverse claimants,' and thus dismissed on subject
matter jurisdiction grounds." (TPR Reply Br. at 5.)  In other
words, TPR contends that the Court could not have dismissed the
interpleader action without the disputed passage, because that
passage explains the Court's legal conclusion that the real
dispute between the parties was not the Proceeds but rather
beneficial ownership.

TPR is correct.  In dismissing the action for want of subject matter jurisdiction, I found that there was no genuine danger "of multiple liability when all potential claimants agree that only one of them is entitled to the res." Glenclova, 874 F. Supp. 2d at 303.  Simply put, I concluded that beneficial ownership and the Proceeds go hand-in-hand as issues.  Because the Trump Group is now the undisputed owner of the Orly Trust Shares, TPR is entitled to the Proceeds paid by the Trump Group for those shares. See id. at 303–04.  It follows that TPR's reliance on the Omnibus Opinion is not misplaced.

It must be emphasized, however, that neither my 2012 Omnibus Opinion nor today's decision announce any kind of equitable or normative conclusion as to who among the Genger siblings ultimately deserves recompense.  That is a different question, one that was left to the state courts to sort out. See Glenclova Inv. Co. v. Trans-Resources, Inc., No. 08 Civ. 7140, 2013 WL 6003512, at *3 (S.D.N.Y. Nov. 12, 2013).  Thus, nothing in this Opinion should be construed as resolving any question other than whether TPR is the next (but not necessarily last) beneficiary of the sale of the Orly Trust Shares.

### 2.   The Significance of the Escrow Agreement

Orly's main argument for dismissal is that none of the preconditions to releasing the escrowed Proceeds, which are set forth in Section 2 of the Escrow Agreement, have been satisfied.

Her interpretation of that section is correct.  The Escrow
Agreement was signed by the parties at a very specific point in
the litigation.  Chancellor Strine in Delaware had ruled that
Arie's transfer of the relevant shares to the Orly Trust was
invalid, returning them to TPR/Sagi, who wanted to sell them to
the Trump Group.  Arie planned to appeal that ruling, and the
Escrow Agreement was designed to dictate what would happen once
the Delaware Supreme Court decided his appeal.  Under the
Agreement's provisions, the Trump Group received the shares in
exchange for payment to the Escrow Agent, who would hold onto
the Proceeds until one of five contingencies occurred:  (1)
mutual consent of the parties; (2) a request from TPR plus an
affirmance by the Delaware Supreme Court of the Chancery Court's
ruling; (3) a request from the Trump Group plus an order from
the Delaware Supreme Court vacating the Chancery Court's ruling;
(4) a request from the Trump Group plus the expiration of Arie
and Orly's time to appeal the Chancery Court's determination; or
(5) a request by one of the parties plus silent acquiescence by
the other parties. (Escrow Agreement § 2(b).)

      As Orly correctly points out, what transpired thereafter
does not fit neatly into any one of these boxes.  Obviously, the
parties continue to be in active conflict, eliminating the first
and fifth contingencies above (mutual consent or silent
acquiescence).  Arie did appeal, eliminating the fourth

16

contingency.  The Delaware Supreme Court reversed Chancellor Strine's ruling on beneficial ownership, eliminating option 2. But the Trump Group did not ask for its money back, as contemplated in option 3 (the last remaining possibility), likely because the reversal was on jurisdictional grounds and not the merits.

The problem with Orly's proposed reading of the Escrow Agreement is that the Agreement completely omits any mention of the Genger v. Genger action in the New York state court.  That case was filed by Orly and her father after the Delaware Chancery Court ruled against them the first time.  The parties have actively litigated the New York case in recent years, and it has become the "epicenter for the Genger family litigation." Glenclova Inv. Co., 2013 WL 6003512, at *2.

Orly now urges that this Court may not order the Escrow Agent to release the Proceeds except in strict accordance with the letter of the Escrow Agreement.  But because the Agreement's terms do not allow for enforcement of any New York state judgment, to accept Orly's argument would be akin to ruling that the New York Supreme Court has no power to adjudicate disputes relating to this money.  That result would be plainly inconsistent with Orly's position that the 2010 New York Supreme Court action (which she filed) is the appropriate place for litigation of these issues. See Orly Moving Br. at 17–18; Orly

17

Reply Br. at 9.)  It is also inconsistent with the position she took in the prior interpleader action. <u>See</u> <u>Pedowitz & Meister LLP</u>, No. 11 Civ. 5602, ECF No. 11 at 6-8.  Having convinced me to stay or dismiss the other Southern District actions in favor of the state proceeding, Orly may not now insist on a reading of the Escrow Agreement that would render the state court impotent.

Orly's position that I cannot rule for TPR without "rewriting" the Escrow Agreement is also at odds with the Omnibus Opinion, which she has never challenged.  First, in that ruling I recommended New York Supreme Court as the optimal venue for adjudicating beneficial ownership and the related issues. <u>See</u> <u>Glenclova</u>, 874 F. Supp. 2d at 304, 307, 309, 314.  I also observe that by the time I issued the Omnibus Opinion, the three main scenarios enumerated in Section 2(b) of the Escrow Agreement whereby the Escrow Agent could release the funds were already impossible.  Nor did I intend to give Orly a unilateral veto over release of the Proceeds, as would be required under the two remaining routes to release of the funds under Section 2(b).  For these reasons, I reject Orly's position on this issue.[1]

---

[1] Orly also argues that she is the only party to make a valid written request for the Proceeds under the Escrow Agreement, and that the question of who-requested-what-first presents a material factual dispute barring the entry of summary judgment.  She is incorrect.  As an initial matter, TPR's letter requesting the Proceeds appears to comply with Section 2b(v) of the Escrow Agreement. <u>See</u> Dellaportas

I conclude that the Escrow Agreement does not prevent me from giving effect to the plain import of my prior rulings.  The Omnibus Opinion states that once "the New York Supreme Court reaches the merits of beneficial ownership" of the Orly Trust Shares, everyone involved would "know which claimant is entitled to the interpleaded funds." Glenclova, 874 F. Supp. 2d at 303. The question of beneficial ownership has now been resolved, and all parties agree that the Trump Group owns the shares.  It follows that TPR is entitled to the Proceeds, with Orly's remaining claims for money damages against TPR and Sagi to be resolved in New York Supreme Court.

### 3.    There Is No Need for an Interpleader

As previously noted, P&M seeks to interplead the Proceeds under Rule 22.  For defensive interpleader to be proper, P&M must reasonably fear double liability or vexatious claims. See 6247 Atlas Corp. v. Marine Ins. Co., 155 F.R.D. 454, 462 (S.D.N.Y. 1994); see also Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993).

---

Dec. Ex. C.  Regardless, today's decision in TPR's favor is not based upon the mechanics of the Escrow Agreement, but upon this Court's prior rulings.  Thus, the question whether it was TPR or Orly who first validly requested the Proceeds is of no moment. See Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

At oral argument, counsel indicated that P&M prefers interpleader to protect itself from liability for damages, as opposed to mere overlapping claims to the Proceeds. (Oral Arg. Tr. at 28–29.)

Interpleader is not necessary in the circumstances of this case.  Because summary judgment will be entered in favor of TPR, P&M as Escrow Agent is required by the force of this judgment to release the Proceeds to TPR.  The mere act of complying with this Opinion and Order will not cause P&M to incur liability for damages to Orly or anyone else.  Accordingly, Orly's motion to dismiss P&M's interpleader crossclaim is granted, albeit for a different reason than those offered by Orly.  There is no record before me regarding whether P&M may be liable on any other basis, and I expressly decline to consider the issue.

### III. Conclusion

For the foregoing reasons, Orly's motion to dismiss the complaint is denied, and TPR's motion for summary judgment is granted.  P&M is directed to release the Proceeds, together with any interest accrued thereon, to TPR.  Orly's motion to dismiss the interpleader crossclaim by P&M is granted.  Orly's motion to dismiss Dalia's crossclaim against her is denied as moot.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:     New York, New York
           May 15, 2014

                              _John F. Keenan_
                              John F. Keenan
                              United States District Judge